## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DALE E. SPIESS,                                )
                                               )
                    Plaintiff,                 )
                                               )         CIVIL ACTION
v.                                             )
                                               )         No. 06-2175-KHV
KEITH MEYERS, et al.,                          )
                                               )
                    Defendants.                )
_____)

### MEMORANDUM AND ORDER

Dale E. Spiess brings suit against Keith Meyers and Carol Foreman under 42 U.S.C. § 1983. Plaintiff alleges that defendants retaliated against him by declining to hire him because he exercised his right to free speech under the First Amendment. This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #18) filed December 7, 2006 and Plaintiff's Motion For Leave To File A Surreply Memorandum In Opposition To Defendant's Motion For Summary Judgment (Doc. #36) filed March 19, 2007. For reasons stated below, the Court overrules the motions.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the parties opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

### Factual Background

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

On September 16, 2004, plaintiff filed suit in this Court against Duane Goossen (Secretary of the Kansas Department of Administration ("KDA")), Howard Fricke (former Secretary of the KDA) and Dan Etzel (management-level KDA employee) alleging in part that defendants had retaliated against

him in violation of the First Amendment by wrongfully failing to hire him to fill the vacant position of

Management Systems Analyst II in the Kansas Central Motor Pool.  See Spiess v. Fricke, Case No. 04-

2458-KHV (D. Kan.) ("Spiess I").  On September 13, 2005, the Court sustained in part defendants'

motion for summary judgment.[1]  Subsequently, plaintiff and Goossen entered into a settlement

agreement which plaintiff signed on September 21, 2005, and Goossen signed on November 14, 2005.[2]

See Settlement Agreement And Full And Final Release, attached as Exhibit 9 to defendants'

Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment ("Defendants'

Memorandum") (Doc. #19) filed December 7, 2006.  The settlement agreement provides in pertinent

part as follows:

> 2.   Dismissal of Pending Lawsuit by Spiess
> In consideration for the payment set forth above in paragraph 1, Spiess agrees
> that upon receipt of said payment, he will dismiss the pending lawsuit and authorize his

---

[1]   In the course of the Spiess I litigation, plaintiff deposed Meyers, who testified that he made staffing decisions regarding the Central Motor Pool after discussing the issue with Fricke and Foreman and obtaining Foreman's consent to fill certain vacant maintenance positions.  Plaintiff later stated in his opposition to the motion for summary judgment that Meyers was the final policymaker with regard to the vacant positions.  The Court dismissed plaintiff's First Amendment retaliation claim against Etzel, stating as follows:

> Plaintiff seeks "[m]onetary relief against Defendant Etzel for failing to hire Plaintiff to fill the Management Systems Analyst I position, in violation of the First Amendment and 42 U.S.C. § 1983."  Etzel seeks summary judgment on plaintiff's claim of retaliatory failure to rehire, contending that he had no hiring authority for Rentfro's position.  In opposing Etzel's motion for summary judgment, plaintiff concedes that Etzel had no hiring authority.  The Court therefore sustains Etzel's motion for summary judgment.

Spiess, 386 F. Supp.2d at 1189 (internal citations and footnotes omitted).  The Court overruled the remainder of defendant's motion for summary judgment.

[2]   Goossen signed the settlement agreement on behalf of the State of Kansas in his official capacity as Secretary of Administration.  As noted above, the Court had previously dismissed Etzel on summary judgment, and the record does not reveal why Fricke was not a party to the agreement.

counsel to sign a Stipulation of Dismissal and any other documents necessary to accomplish the dismissal.

3.      Release and Discharge by Spiess

        In further consideration for the payment set forth above, Spiess, his family members, heirs, successors and assigns (hereinafter "Releasing Parties"), hereby agree to RELEASE AND FOREVER DISCHARGE Howard Fricke, Duane Goossen, the State of Kansas, and/or the Department of Administration of and from any and all claims, assertions, demands, damages, liabilities, actions, or causes of action of whatever kind or nature, whether now known, unknown, or unanticipated, whether now in existence or which may develop at some time in the future, which in any way arise out of, are connected to or related to Spiess' exercise of his right to free speech, or any other rights or claims that Spiess has or may have had against Howard Fricke, Duane Goossen, the State of Kansas and/or the Department of Administration, for acts or omissions related to his employment as Director of the Central Motor Pool, decisions concerning the Central Motor Pool and Van Pool and/or expressed in his pending lawsuit.

        Spiess and other Releasing Parties waive any rights and claims against Howard Fricke, Duane Goossen, the State of Kansas and/or the Department of Administration that he might be able to assert under any city ordinance or state, federal or common law relating to employment, breach of contract, or discrimination in employment including but not limited to, discrimination related to disability, handicap, race, religion, sex, equal pay, national origin, creed, color, and retaliation discrimination, including but not limited to claims under . . . all . . . local, state, and federal laws which are meant to protect employment relationships and under which Spiess may have rights and claims with respect to the matters described in the immediately preceding paragraph.

4.      Waiver of Rights for Unsuccessful Applications

        In further consideration of the payment set forth above, Spiess and the other Releasing Parties hereby agree to waive any and all future rights or claims for wrongful failure to hire, retaliation, or any other cause of action arising out of unsuccessful applications for employment made by Spiess against the Kansas Department of Administration, Kansas Department of Commerce or any other State of Kansas agency where Howard Fricke might serve.  This waiver applies to claims against the State of Kansas, the Kansas Department of Commerce, any other State of Kansas agency where Howard Fricke might serve, and any employees, representatives and agents of those agencies.

        This waiver shall remain in force and effect during the entire Administration of Governor Kathleen Sebelius. * * *

8.      Entire Agreement

        This agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supercedes any prior agreements or understandings, written or oral.

4

9.    Binding Agreement
      This agreement shall be binding upon the parties hereto.

10.   Law of Kansas
      This agreement shall be construed, enforced and governed in all respects by the laws of the State of Kansas.

11.   Acknowledgment
      Spiess acknowledges that he has carefully read this Agreement, that he has been advised in writing by this Agreement to consult with an attorney, that he understands all of its provisions and effect of his action in executing it, and that his execution of this agreement is knowing and voluntary.

Id. On November 21, 2005, the parties filed a joint stipulation of dismissal, which the Court granted on November 28, 2005.

Here, plaintiff brings suit under Section 1983 against Keith Meyers and Carol Foreman in their individual capacities alleging retaliatory wrongful failure to hire in violation of the First Amendment. Specifically, the complaint alleges that plaintiff expressed an interest in applying for the vacant position of Management Systems Analyst II in the Kansas Central Motor Pool, that Meyers and Foreman knew of this interest, and that they participated in the decision not to hire plaintiff to fill that position. The complaint does not allege that plaintiff formally applied for the position, only that he expressed an interest in applying for the position. The record contains no evidence that plaintiff actually applied for the vacant position of Management Systems Analyst II.

Meyers is an employee of the Kansas Department of Commerce ("KDC"). On July 10, 2006, plaintiff obtained a summons which named Meyers and listed his address as "Keith Meyers, c/o KS Attorney General, Phill Kline, 120 SW 10th Ave., 2nd Floor, Topeka, KS 66612-1297." See Summons And Return Of Service, attached as Exhibit 7 to Defendants' Memorandum (Doc. #19). The return of service indicates that plaintiff delivered the summons by certified mail to "Keith Meyers, Curtis State Office Bldg, 1000 SW Jackson, Ste 500, Topeka, KS 66612" on July 14, 2006, and that John K. Perkins

signed for the delivery.[3]  Meyers' place of business with the KDC is located in Suite 100 of the Curtis State Office Building.  On December 13, 2006, plaintiff served on Meyers an alias summons by certified mail delivered to "Keith Meyers, 3005 Riverview, Lawrence, KS 66049," his dwelling and usual place of abode.  See Alias Summons And Return Of Service (Doc. #22) filed December 15, 2006.

Foreman is an employee of the KDA.  On July 10, 2006, plaintiff obtained a summons which named Foreman and listed her address as "Carol Foreman, c/o KS Attorney General, Phill Kline, 120 SW 10th Ave., 2nd Floor, Topeka, KS 66612-1297."  See Summons And Return Of Service, attached as Exhibit 6 to Defendants' Memorandum (Doc. #19).  The return of service indicates that plaintiff delivered the summons by certified mail to "Carol Foreman, Curtis State Office Bldg, 1000 SW Jackson, Ste 500, Topeka, KS 66612" on July 14, 2006, and that John K. Perkins signed for the delivery.  The address indicated on the return of service is Foreman's place of business with the KDA.  On December 14, 2006, plaintiff served on Foreman an alias summons by certified mail delivered to "Carol Foreman, 2304 SW Brookhaven Lane, Topeka, Kansas 66614," her dwelling and usual place of abode.  See Alias Summons And Return Of Service (Doc. #23) filed December 18, 2006.

## **Analysis**

Under Section 1983, plaintiff alleges that defendants wrongfully failed to hire him in retaliation for his exercise of free speech under the First Amendment by declining to hire him for a position in which he had expressed interest.  Defendants argue that the Court should grant summary judgment because (1) the claim is barred by the doctrine of res judicata; (2) the claim is barred by the doctrine of collateral estoppel; (3) the claim is barred by the Spiess I settlement agreement; (4) the summonses which plaintiff obtained are defective; (5) plaintiff did not properly serve process on defendants; and

---

[3]        The record does not reveal Perkins' employment position.

(6) the claim is barred by the applicable statute of limitations. Foreman also argues that the claim against her is barred by the doctrine of judicial estoppel.

## I.    Res Judicata

Defendants argue that plaintiff's claim is barred by res judicata because plaintiff could have joined them in his prior suit against Goossen, Fricke and Etzel. Res judicata precludes a party from re-litigating claims which were or could have been raised in an earlier action. King v. Union Oil Co. of Cal., 117 F.3d 443, 445 (10th Cir. 1997). To properly invoke res judicata, defendants must show (1) a judgment on the merits in the earlier action; (2) identity of the parties or privies in the two suits; (3) identity of the cause of action in both suits; and (4) a full a fair opportunity for plaintiff to litigate the claim in the first suit. Zhu v. Countrywide Realty, Co., 160 F. Supp.2d 1210, 1224 (D. Kan. 2001) (citing Nwosun v. Gen. Mills Rests., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997)). Defendants bear the burden of presenting sufficient evidence on these elements. Id.

Plaintiff argues that res judicata does not apply because defendants are not in privity with Goossen, Fricke and Etzel. Under Tenth Circuit law, "privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." Lowell Staats Mining Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1275 (10th Cir. 1989). Lowell Staats notes that privity may be found in a trustee-beneficiary relationship, a seller-buyer relationship or where two individuals represent the interests of the same person. Id. Courts have also found privity between a parent company and its wholly owned subsidiary, see B-S Steel of Kan., Inc. v. Tex. Indus., Inc., 327 F. Supp.2d 1252, 1259 (D. Kan. 2004), and between government employees in their official capacities, see Dixon v. Sullivan, 28 Fed. Appx. 810, 812 (10th Cir. 2001).

To the extent that plaintiff sued the State of Kansas and its agencies in <u>Spiess I</u>,[4] defendants are not in privity with those parties because in this case plaintiff brings suit against defendants in their individual capacities.  <u>See</u> <u>Willner v. Budig</u>, 848 F.2d 1032, 1034 n.2 (10th Cir. 1988) (government employees in individual capacities not in privity with government employer).  Further, defendants cite no authority for the proposition that as government employees sued individually, they are in privity with other government employees whom plaintiff had previously sued individually in <u>Spiess I</u>.  Such a proposition is inconsistent with the rule in <u>Lowell Staats</u> that privies must be "really and substantially in interest the same" because defendants who are individually sued maintain unique interests.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167-68 (1985) (victory against defendant in personal capacity is victory against individual, not against entity which employs him); <u>see also</u> <u>Pittman v. Mich. Corr. Org.</u>, 123 Fed. Appx. 637, 641 (6th Cir. 2005) (strict claim preclusion does not apply to individual government officials with respect to individual capacity claims); <u>Beard v. O'Neal</u>, 728 F.2d 894, 897 (7th Cir. 1984) (government employees, sued individually for their own acts, not in privity for res judicata purposes).  Because defendants are not in privity with the <u>Spiess I</u> defendants, res judicata does not bar plaintiff's claim and defendants are not entitled to summary judgment on that ground.

## II.   Collateral Estoppel

Defendants argue that plaintiff's claim is foreclosed by collateral estoppel because the Court made factual findings in <u>Spiess I</u> which are dispositive of the claim in this case.  The doctrine of collateral estoppel attaches only when an issue of fact or law is actually litigated and determined by a

---

[4]      In <u>Spiess I</u>, plaintiff sued Goossen in his official capacity as Secretary of Administration, <u>see</u> <u>Spiess</u>, 386 F. Supp.2d at 1180, which is functionally an action against the KDA and the State of Kansas, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985) (official capacity claims treated as claims against government entity).

valid and final judgment, and the determination is essential to the judgment. B-S Steel of Kan., Inc. v. Tex. Indus., Inc., 439 F.3d 653, 662 (10th Cir. 2006) (citing Arizona v. California, 530 U.S. 392, 414 (2000)).  To properly invoke collateral estoppel, defendants must show that (1) the issue previously decided is identical to the issue presented in the current action; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is raised was a party, or in privity with a party, to the prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  Id.

　　　　Defendants argue that in its summary judgment order dismissing plaintiff's claim against Etzel in Spiess I, the Court found that (1) the KDA never posted the vacant Management Systems Analyst II position; (2) Meyers reassigned the duties of that position to another employee; and (3) Meyers could not fill the position until he completed a staff reduction.  See Spiess, 386 F. Supp.2d at 1184-85 (setting forth uncontroverted background facts).  While dismissal on summary judgment constitutes a judgment on the merits for purposes of collateral estoppel, see Cubie v. Bryan Career College, Inc., 244 F. Supp.2d 1191, 1201 n.49 (D. Kan. 2003), the linchpin to collateral estoppel is a clear demonstration of what was actually litigated in the prior matter, Kincaid v. Sturdevant, 437 F. Supp.2d 1219, 1224 (D. Kan. 2006).  As noted above, the Court dismissed plaintiff's claim against Etzel solely because plaintiff conceded that Etzel possessed no hiring authority.  The issues which defendants now seek to preclude from re-litigation were not essential to that judgment, and thus do not suffice to trigger collateral estoppel in this case.  See B-S Steel, 439 F.3d at 662 (factual determination in prior case must be essential to judgment before collateral estoppel attaches).  The Court therefore finds that collateral estoppel does not apply in this case.

　　　　Further, even if the issues were essential to the Court's judgment in Spiess I, they have no

9

bearing on plaintiff's claim in this case.  To establish his retaliation claim based on protected speech, plaintiff must show that (1) his speech involved a matter of public concern; (2) his interest in engaging in the speech outweighs the government employer's interest in regulating it; and (3) the speech was a substantial motivating factor behind an adverse employment action taken against him.[5]  See Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22, 473 F.3d 1271, 1276 (10th Cir. 2007);  Baca v. Sklar, 398 F.3d 1210, 1218-19 (10th Cir. 2005).  Because none of the issues which defendants raise dispose of any of the essential elements of plaintiff's claim, collateral estoppel would not entitle defendants to summary judgment in this case.

## III.    The Spiess I Settlement Agreement

Defendants argue that the plain language of paragraph four of the settlement agreement in Spiess I indicates that plaintiff waives any claim against them for retaliation and/or wrongful failure to hire.  Although the settlement agreement does not specifically mention them by name, defendants argue that as employees of the KDC (Meyers) and the KDA (Foreman), they are nevertheless protected by its terms.  Plaintiff argues that the settlement agreement does not apply because (1) it does not specifically name defendants or generally refer to all employees of the State and its agencies and (2) defendants have not produced parol evidence regarding the parties' intent to release them under the agreement.

As an initial matter, the parties dispute whether the Court should apply federal or Kansas law to the Spiess I settlement agreement.  Generally, a settlement agreement which impacts federal employment rights will be governed by federal common law unless the parties have agreed that state

---

[5]     The Court notes that in Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006), the Supreme Court  limited the scope of protected speech of government employees to exclude statements by those employees made pursuant to their official duties.  The issues which defendants raise do not speak to whether plaintiff made his statements pursuant to his official duties.

law will govern.  See Chavez v. New Mexico, 397 F.3d 826, 830-31 (10th Cir. 2005) (citing Heuser v. Kephart, 215 F.3d 1186, 1190 (10th Cir. 2000)).  Here, paragraph ten of the Spiess I settlement agreement provides that "[t]his agreement shall be construed, enforced and governed in all respects by the laws of the State of Kansas."  Based on this language, the Court will apply Kansas law because the parties have clearly agreed that Kansas law should govern.[6]

Under Kansas law, a written settlement agreement is a  contract and is subject to the same rules of construction that govern any other written contract.  Cent. Kan. Credit Union v. Mut. Guaranty Corp., 886 F. Supp. 1529, 1537 (D. Kan. 1995).  The overriding goal in the construction of a contract under Kansas law is to effectuate the intent and purpose of the parties.  Id. (citing Heyen v. Hartnett, 235 Kan. 117, 122, 679 P.2d 1152, 1156 (1984)).  A written contract which is free from ambiguity may be construed as a matter of law, id. (citing Wood River Pipeline Co. v. Willbros Energy Servs. Co., 241 Kan. 580, 582, 738 P.2d 866, 869 (1987)), and where a settlement agreement is unambiguous, the Court's inquiry into the parties' intent is limited to the four corners of the agreement, Boos v. Nat. Fed'n of State High Sch. Ass'ns, 20 Kan. App.2d 517, 524, 889 P.2d 797, 803 (1995); see also Cent. Kan. Credit Union, 886 F. Supp. at 1537 (court must enforce unambiguous settlement agreement by its expressed terms to give effect to parties' intentions).  An unambiguous contract is one which does not contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language.  See Patrons Mut. Ins. Ass'n v. Harmon, 240 Kan. 707, 713, 732 P.2d 741, 746 (1987).

---

[6]        Notably, federal law and Kansas law do not appear to be different with respect to the basic contract principles which guide the Court's analysis; both turn on the intent of the parties to the agreement.  See Thompson v. United Transp. Union, No. 99-2288-JWL, 2000 WL 1929963, at *5 (D. Kan. Dec. 19, 2000) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 345-46 (1971)); Luther v. Danner, 268 Kan. 343, 351-52, 995 P.2d 865, 871 (2000).

Under Kansas law, when a written instrument is complete and unambiguous, the Court may not imply additional terms within the agreement.  Fed. Land Bank of Wichita v. Vann, 20 Kan. App.2d 635, 640, 890 P.2d 1242, 1246 (1995).  Where a settlement agreement does not identify a party to be released "by name or other specific identifying terminology," Kansas courts apply a rebuttable presumption that the parties to the agreement did not intend to release the unnamed party.  Luther v. Danner, 268 Kan. 343, 352, 995 P.2d 865, 871 (2000); see also Shinkle v. Union City Body Co., 94 F.R.D. 631, 634 (D. Kan. 1984) (citing Kennedy v. City of Sawyer, 228 Kan. 439, 453-54, 618 P.2d 788, 799 (1980)) (settlement agreement must identify released parties by name or general description).  A valid settlement agreement is effective to extinguish pre-existing claims directly tied to the settled dispute and those issues which the parties intend to settle.  Cent. Kan. Credit Union, 886 F. Supp. at 1538 (citing In re Estate of Engels, 10 Kan. App.2d 103, 106, 692 P.2d 400, 404 (1984)).

The parties do not argue that the settlement agreement is ambiguous.  Each relies on the express language of the agreement.  In this regard, section four of the agreement is critically important and provides as follows:

> Spiess . . . agree[s] to waive any and all future rights or claims for wrongful failure to hire, retaliation, or any other cause of action arising out of unsuccessful applications for employment made by Spiess against the Kansas Department of Administration, Kansas Department of Commerce or any other State of Kansas agency where Howard Fricke might serve.  This waiver applies to claims against the State of Kansas, the Kansas Department of Commerce, any other State of Kansas agency where Howard Fricke might serve, and any employees, representatives and agents of those agencies.

Significantly, section four purports to waive any claims "arising out of unsuccessful applications for employment."  Here, the record contains no evidence that plaintiff applied for a vacant position of Management Systems Analyst II in the Kansas Central Motor Pool.  Indeed, plaintiff's claim rests solely

on defendants' rebuke of his <u>interest</u> in applying for the position, which plaintiff argues constitutes an adverse employment action.  Because plaintiff's claim does not arise out of any unsuccessful application for employment, the plain language of the <u>Spiess I</u> settlement agreement does not foreclose it and defendants are not entitled to summary judgment on that ground.[7]

## IV.    Insufficiency Of Process

Defendants argue that they are entitled to summary judgment because plaintiff's original summonses are defective in that they list defendants' addresses as "c/o KS Attorney General Phill Kline, 120 SW 10th Ave., 2nd Floor, Topeka, KS 66612-1597."  Defendants argue that the Kansas attorney general is not an agent authorized to receive service on their behalf.  Defendants' challenge to the contents of the summonses is governed by Rule 4(a), Fed. R. Civ. P., which provides as follows:

> The summons shall be signed by the clerk, bear the seal of the court, identify the court and the parties, de directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff.  It shall also state the time within

---

[7]    Beyond section four's specific application to claims "arising out of unsuccessful applications for employment," however, the Court notes that the scope of the waiver is ambiguous. <u>See</u> <u>St. Paul Surplus Lines Ins. Co. v. Int'l Playtex, Inc.</u>, 245 Kan. 258, 271, 777 P.2d 1259, 1268 (1989) (ambiguity of contract question of law for court to decide); <u>see also</u> <u>Am. Maplan Corp. v. Heilmayr</u>, 179 F. Supp.2d 1249, 1252 (D. Kan. 2002) (court not bound by parties' arguments that contract is unambiguous).  For example, sentence one of section four purports to waive claims against the KDA, but sentence two, which clarifies the application of the waiver, does not include the KDA. This creates doubt whether sentence two, which purports to include employees within the waiver, applies to employees of the KDA.  Section four is also unclear with respect to the last part of sentence two, which states that the waiver applies to "any employees . . . of those agencies."  Clearly, the reference to "those agencies" does not modify the entire preceding text of sentence two because the State of Kansas is not an agency.  While this language may describe both the KDC and "any other State of Kansas agency where Howard Fricke might serve," it might also be reasonably interpreted as modifying only those agencies where Fricke might serve.  This creates doubt whether the waiver applies to employees of the KDC.

Were it necessary to determine whether the settlement agreement reached defendants as agency employees, the Court could not find the agreement unambiguous in this regard.  Because defendants have produced no extrinsic evidence which might clarify the parties' intent on this issue, the Court could not grant defendants summary judgment based on the <u>Spiess I</u> settlement agreement.

13

which the defendant must appear and defend, and notify the defendant that failure to do so will result in a judgment by default against the defendant for the relief demanded in the complaint.

While Rule 4(a) requires that a summons be directed to defendant, it sets forth no requirement regarding defendant's address.  See Oltremari v. Kan. Soc. & Rehabilitative Serv., 871 F. Supp. 1331, 1349 (D. Kan. 1994).  Here, the original summonses name Meyers and Foreman as defendants, which is sufficient under Rule 4(a) despite the fact that the summonses list incorrect addresses.  Defendants make no other objections to the content of the summonses.  The Court therefore finds that Defendants are not entitled to summary judgment based on insufficiency of process.

## V.    Insufficiency Of Service Of Process

Defendants argue that they are entitled to summary judgment because plaintiff has not properly served process on them under Rule 4.  Rule 4(e) governs service on individuals and provides that service may be effected by personal delivery, delivery at the individual's dwelling house or usual place of abode, delivery on the individual's authorized agent, or pursuant to the laws of the State of Kansas.  On July 14, 2006, plaintiff served a summons on each defendant.  As noted above, the summonses listed the address for both defendants as the office of the Kansas attorney general.  The return of service of each summons, however, indicates that both summonses were actually delivered to the Curtis State Office Bldg, 1000 SW Jackson, Suite 500, Topeka, KS 66612.  Suite 500 is Foreman's place of business with the KDA; Meyers' place of business with the KDC is suite 100.  On December 13, 2006, plaintiff served an alias summons on Meyers by certified mail delivered to his home address.  On December 14, 2006, plaintiff served an alias summons on Foreman by certified mail delivered to her home address.  Plaintiff argues he has sufficiently served defendants because (1) the service of the original summonses complies with K.S.A. § 60-304(d)(5) governing service on government bodies; (2) the service of the

14

original summonses constitutes substantial compliance under K.S.A. § 60-204; and (3) the service of the alias summonses complies with Rule 4(e) and Kansas law.

### A.   Service Under K.S.A. § 60-304(d)(5)

Plaintiff argues that the service of the original summonses on defendants is sufficient because it complies with K.S.A. § 60-304(d)(5).  Because defendants are employees of the State of Kansas, plaintiff asserts that Section 60-304(d)(5) requires service on the Kansas attorney general.  Section 60-304(d)(5) provides as follows:

> service of process . . . shall be made . . . upon the state or any governmental agency of the state, when subject to suit, by serving the attorney general or an assistant attorney general.  Service by return receipt delivery shall be addressed to the appropriate official at the official's government office.

Because defendants are sued individually, however, Section 60-304(d)(5) is not applicable.  See Copeland v. Robinson, 25 Kan. App.2d 717, 721-22, 970 P.2d 69, 74 (1998) (official capacity claim triggers service requirements of Section 60-304(d)(5)); Bird v. Kan. Dep't of Transp., 23 Kan. App.2d 164, 166, 928 P.2d 915, 917 (1996) (citing City of Hutchinson v. Hutchinson, Kan. Office of Kan. State Employment Serv., 213 Kan. 399, 404-06, 517 P.2d 117, 121-22 (1973)) (under Section 60-304(d)(5), "government agency" includes government employees sued in official capacities); see also Bell v. City of Topeka, No. 06-4026-JAR, 2007 WL 628188, at *2 (D. Kan. Feb. 26, 2007) (service on City Clerk sufficient as to official capacity claims against city government officials, but not with respect to individual capacity claims).

K.S.A. § 60-304(a) governs service of process upon individuals under Kansas law, including government employees sued in their individual capacities.  See Scherer v. United States, 241 F. Supp.2d 1270, 1281-82 (D. Kan. 2003) (applying Section 60-304(a) where government officials sued individually).  Section 60-304(a) provides as follows:

service of process . . . shall be made . . . [u]pon an individual . . . by serving the individual or by serving an agent authorized by appointment or by law to receive service of process. . . . Service by return receipt delivery shall be addressed to an individual at the individual's dwelling house or usual place of abode and to an authorized agent at the agent's usual or designated address.  If service by return receipt delivery to the individual's dwelling house or usual place of abode is refused or unclaimed, the sheriff, party or party's attorney seeking service may complete service by certified mail, restricted delivery, by serving the individual at a business address after filing a return on service stating the return receipt delivery to the individual at such individual's dwelling house or usual place of abode has been refused or unclaimed and a business address is known for such individual.

Here, plaintiff did not serve the original summonses on defendants at their respective dwellings or usual places of abode, or to their respective agents at the agent's usual or designated address.  The Court therefore finds that service on defendants of the original summonses delivered by certified mail is technically insufficient under Section 60-304(a).  See Scherer, 241 F. Supp.2d at 1282 (service delivered to government employee's work address insufficient under Section 60-304(a) when defendant sued in individual capacity).

###    B.    Substantial Compliance Under K.S.A. § 60-204

Plaintiff argues that even if service of the original summonses did not strictly comply with the requirements for service of process under Kansas law, service is sufficient because he substantially complied with such requirements.  K.S.A. § 60-204 establishes the doctrine of substantial compliance and provides in pertinent part as follows:

In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected.

The Kansas Supreme Court, interpreting "substantial compliance," has held that "[b]efore there can be a valid personal service of process there must be a substantial compliance with some method of process provided in K.S.A. 60-301 et seq."  Briscoe v. Getto, 204 Kan. 254, 256-57, 462 P.2d 127, 129 (1969).

16

The Kansas Supreme Court further noted as follows:

> [A]s we read the statute it seems clear that new methods of service were not anticipated. There must first be substantial compliance with some statutory method of service. Irregularities or omissions will then be ignored if the court finds that the party to be served was made aware that an action or proceeding was pending.

Id. at 257, 462 P.2d at 129.  In applying Section 60-204, the Court must find that defendant's awareness of the suit results directly from plaintiff's substantial compliance with the service of process.  Burnham v. Humphrey Hospitality REIT Trust, Inc., 403 F.3d 709, 716 (10th Cir. 2005); see also Cook v. Cook, 32 Kan. App.2d 214, 220, 83 P.3d 1243, 1247 (2003) (notice of suit must come from process of service).

Because Section 60-304(a) governs service of process on individual defendants in this case, plaintiff must substantially comply with its requirements to satisfy Section 60-204.  Plaintiff argues that the Court should find substantial compliance because defendants obtained knowledge of the suit by service of the original summonses, evidenced by the fact that they both filed answers on August 3, 2006. Defendants' knowledge of the suit by itself, however, is insufficient under Section 60-204.  See Taher v. Wichita State Univ., No. 06-2132-KHV, 2007 WL 852364, at *3 (D. Kan. March 19, 2007) (knowledge of suit without evidence of plaintiff's substantial compliance with statutory method of service insufficient to establish substantial compliance under Section 60-204).  To find substantial compliance in this case, the Court must determine whether service on defendants at suite 500 of the Curtis State Office Building substantially complies with a method of service set forth in Section 60-304(a).  The Court evaluates service on each defendant separately.

### i.   Service On Foreman

The Court first considers plaintiff's service of process of the original summons on Foreman, whom plaintiff served at her place of business (suite 500 of the Curtis State Office Building) without first serving her at her dwelling. Kansas courts have not determined whether service by certified

mail on an individual at her place of business constitutes substantial compliance with Section 60-304(a)

where plaintiff does not first attempt to serve the individual at her dwelling or through her agent.  See

McIntyre v. Rumsey, No. 90,200, 2003 WL 22990205, at *2 (Kan. Ct. App. Dec. 19, 2003) (discussing

substantial compliance where plaintiff first serves individual at her place of business, but finding issue

abandoned on appeal).

     The judges of this district who have considered this issue offer conflicting opinions.  In Fulcher

v. City of Wichita, 445 F. Supp.2d 1271 (D. Kan. 2006), the Honorable John W. Lungstrum held as

follows:

> Before there can be valid service pursuant to K.S.A. 60-204, there must be substantial
> compliance with some method of service and, thereafter, irregularities and omissions will
> be cured by awareness of the action.  See Briscoe v. Getto, 204 Kan. 254, 256-57, 462
> P.2d 127 (1969).  A "new method of service," such as serving an individual at his place
> of business without first attempting service at his residence, does not satisfy K.S.A.
> § 60-204.  Id. at 257, 462 P.2d 127.

Id. at 1275 n.1.  In Ledbetter v. City of Topeka, 112 F. Supp.2d 1239 (D. Kan. 2000), the Honorable

Carlos Murguia held as follows:

> The record here indicates that plaintiff has effected service of process of defendant
> Wagnon through substantial compliance with § 60-304(a).  Plaintiff served the summons
> and complaint upon defendant Wagnon at her place of business via certified mail. . . .
> Although plaintiff did not follow § 60-304(a)'s mandate to first attempt service of
> process by certified mail at the residence of the defendant, defendant Wagnon received
> actual notice of the lawsuit. . . . Although the service of process achieved in this case is
> not a model to follow, this court finds such service was proper under Kansas law.

Id. at 1245.

     To the extent that Fulcher relies on Briscoe for the proposition that service on an individual at

her place of business constitutes a "new method of service" which does not satisfy Section 60-204, its

holding is undermined by McIntyre, in which the Kansas Court of Appeals noted that

     reliance . . . on Haley v. Hershberger, 207 Kan. 459, 485 P.2d 1321 (1971), to stand for

the proposition that individual service first attempted at a place of business does not constitute substantial compliance appears misplaced. At the time of <u>Haley</u>, K.S.A. 60-304(a) did not include service at a place of business as a secondary option for service upon individuals. The <u>Haley</u> court found that service at an individual's place of business was improper at that time because it was a "new" method not contemplated by the statutes.

2003 WL 22990205, at *2. Like <u>Haley</u>, <u>Briscoe</u> predates the amendment of Section 60-304(a) to include service at a place of business as a secondary option for service on an individual.[8] Because service at an individual's place of business no longer constitutes a "new method of service" not contemplated by Section 60-304(a), the Court finds <u>Fulcher</u> unpersuasive.

Here, the record indicates that plaintiff served process on Foreman at her place of business via certified mail on July 14, 2006. Foreman's answer, filed 20 days after service, evinces her actual notice of the action. <u>See</u> <u>Ledbetter</u>, 112 F. Supp.2d at 1245. Under these circumstances, the Court finds that plaintiff has substantially complied with Section 60-304(a) because service of process at Foreman's place of business is a method contemplated by Section 60-304(a) and Foreman became aware of the action through plaintiff's service of process. Under Section 60-204, the Court therefore ignores the irregularities of plaintiff's service of process and finds such service sufficient under Kansas law. Foreman is not entitled to summary judgment on the ground of insufficient service of process.

### ii.    Service On Meyers

Unlike Foreman, plaintiff did not serve the original summons on Meyers at his place of business with the KDC, which is suite 100 of the Curtis State Office Building. Instead, plaintiff served Meyers at suite 500 of the same building, which is the office of the KDA. Under Kansas law, the KDC

---

[8]    The Kansas Supreme Court decided <u>Briscoe</u> in 1969. In 1990, the Kansas legislature amended Section 60-304(a) to allow for service of process at an individual's place of business after service at the individual's dwelling or with the individual's agent is refused or unclaimed. 1990 Kan. Sess. Laws at 1272.

and the KDA are distinct departments.  <u>Compare</u> K.S.A. § 74-5002a(a) (creating KDC under direction of secretary of commerce), <u>with</u> K.S.A. § 75-3702a(a) (creating KDA under direction of secretary of administration).  Plaintiff cites no authority for the proposition that serving a state employee at the office of a wholly different state department constitutes substantial compliance under Section 60-204.  Because suite 500 of the Curtis State Office Building is not Meyers' place of business, plaintiff's service on Meyers' by certified mail delivered to suite 500 is not a contemplated method of service on an individual under Section 60-304(a) and does not constitute substantial compliance under Kansas law.

### C.    Service Of The Alias Summons

Plaintiff argues that even if service of the original summons fails, service of the alias summons by certified mail to Meyers' dwelling is sufficient under Rule 4(e) and Kansas law.[9]  Defendants concede this point.  <u>See</u> <u>Defendants' Reply To Plaintiff's Memorandum In Opposition To Defendants'</u> <u>Motion For Summary Judgment</u> (Doc. #34) filed February 9, 2007, at 26 (noting that "Meyers [was] not properly served with process until December 13, 2006.").  The Court notes that service of the alias summons occurred outside of the 120-day period under Rule 4(m).  As explained below, however, the Court finds that an extension of the 120-day period is appropriate in this case.  The Court therefore finds that Meyers is not entitled to summary judgment on the ground of insufficient service of process.

### VI.    Statute Of Limitations

Defendants argue that they are entitled to summary judgment because plaintiff's claim is barred by the applicable statute of limitations.  Applying the two-year statute of limitations under K.S.A. § 60-

---

[9]    Because the Court finds that plaintiff's service on Foreman substantially complied with Kansas law, the Court considers the sufficiency of the alias summons only with respect to Meyers.

513(a)(4), defendants argue that plaintiff was required to file his complaint by June 15, 2006.[10]  While defendants concede that plaintiff filed his complaint on May 4, 2006, they argue that plaintiff did not properly serve process on them within 120 days of the filing of the complaint as required by Rule 4(m), and therefore did not commence his action within the limitations period.

As noted above, the Court finds that plaintiff substantially complied with service of process requirements under Kansas law in serving Foreman.  Foreman's argument is therefore without merit because plaintiff's service – which he effectuated on July 14, 2006 (i.e. 71 days after he filed the complaint) – satisfies the 120-day requirement under Rule 4(m).  Foreman is not entitled to summary judgment on the ground that plaintiff's claim is barred by the statute of limitations.

Meyers correctly argues that by not properly serving him until December 13, 2006, plaintiff effected service outside of the 120-day period (i.e. 223 days after he filed the complaint).  Under Rule 4(m), however, the Court has discretion to grant plaintiff an extension of the 120-day period in lieu of the dismissal which Meyers seeks.  Such an extension is particularly appropriate where defendant has not been prejudiced by the delay of service and the statute of limitations might bar any refiled action. Mehus v. Emporia State Univ., 295 F. Supp.2d 1258, 1273-74 (D. Kan. 2004) (citing Espinoza v. United States, 52 F.3d 838, 842 (10th Cir. 1995)).  Here, Meyers has been on notice of plaintiff's lawsuit since its commencement (as evidenced by his answer filed August 3, 2006), and makes no argument that he

---

[10]     Plaintiff seeks leave to file a surreply which argues that the Kansas Supreme Court's recent decision in Burnett v. Sw. Bell Tel., L.P., 151 P.3d 837 (2007), dictates that the Court apply a three-year statute of limitations in this case under K.S.A. § 60-512(2) because the action is created by statute.  Because the Court finds that plaintiff's service of process on defendants is sufficient to avoid the statute of limitations regardless whether it applies a two-year or three-year statute of limitations, the Court need not resolve this issue and overrules plaintiff's motion for leave to file a surreply.  See Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005) (court may preclude surreply where new material not necessary to summary judgment motion).

would be prejudiced by an extension of the 120-day period.  Moreover, Meyers' argument that plaintiff's claim is now time-barred cuts in favor of an extension rather than dismissal.  Krueger v. Doe, 162 F.3d 1173 (Table), 1998 WL 717286, at *2 (10th Cir. Oct. 14, 1998) (citing Fed. R. Civ. P. 4(m) advisory committee's note).  Under these circumstances, the Court finds that plaintiff's service of the alias summons on Meyers – 103 days after the 120-day deadline – should be recognized as sufficient under Rule 4(m).  Meyers is not entitled to summary judgment on the ground that plaintiff's claim is barred by the statute of limitations.

## VII.    Judicial Estoppel

Foreman argues that plaintiff's claim is barred by the doctrine of judicial estoppel because in Spiess I, plaintiff conceded that Meyers possessed hiring authority to fill the vacant position of Management Systems Analyst II, and did not argue that Foreman was involved in the hiring decision. Plaintiff responds that his positions in Spiess I and this case are not inconsistent because Foreman may be held liable under Section 1983 even though she was not the primary decisionmaker.

Judicial estoppel provides that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining his position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." JP Morgan Trust Co, Nat'l Ass'n v. Mid-Am. Pipeline Co., 413 F. Supp.2d 1244, 1276 (D. Kan. 2006) (quoting Johnson v. Lindon City Corp., 405 F.3d 1065, 1069 (10th Cir. 2005)).  In applying judicial estoppel, the Court should consider whether (1) the party's later position is clearly inconsistent with its earlier position; (2) the party has succeeded in persuading the Court to accept that party's earlier position; and (3) the party seeking to assert the inconsistent position would derive an unfair advantage or impose unfair detriment on the opposing party if not estopped.  Id.

at 1276-77.

Here, judicial estoppel is not appropriate because plaintiff's claim that Foreman was involved in the hiring decision is not inconsistent with the argument in Spiess I that Meyers was the primary decisionmaker.  The Tenth Circuit has recognized that

> [f]or liability under Section 1983, direct participation is not necessary.  Any official who "causes" a citizen to be deprived of her constitutional rights can also be held liable.  The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.

Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990) (quoting Conner v. Reinhard, 847 F.2d 384, 396-97 (7th Cir. 1988)).  Because Foreman may be held liable under Section 1983 for her involvement in the decisionmaking process even though Meyers was the primary decisionmaker, plaintiff's position in Spiess I that Meyers maintained hiring authority to fill the vacant position of Management Systems Analyst II does not trigger judicial estoppel in this case and plaintiff is not entitled to summary judgment on that ground.[11]

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #18) filed December 7, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Leave To File A Surreply Memorandum In Opposition To Defendant's Motion For Summary Judgment (Doc. #36) filed March 19, 2007 be and hereby is **OVERRULED**.

---

[11]    While Foreman argues that the record evidence in Spiess I is insufficient to establish her liability under Section 1983, she does not contest the sufficiency of the record evidence in this case with regard to her involvement in the hiring process, or otherwise suggest that no genuine issue of material fact exists as to the elements of plaintiff's Section 1983 claim such that she would be entitled to summary judgment.

23

Dated this 10th day of April, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge